IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KRISTIN BAUM,<br>on behalf of herself and all<br>others similarly situated, | : <br> : <br> : <br> : | CLASS ACTION |
| Plaintiff, | : <br> : | Civil Action No.: 3:07-cv-90 |
| v. | : <br> : | DEMAND FOR JURY TRIAL |
| ASTRAZENECA LP, | : <br> : | |
| Defendant. | : <br> : <br> : | |

---

## PLAINTIFF'S BRIEF IN RESPONSE TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

John R. Linkosky, Esquire
**JOHN LINKOSKY & ASSOCIATES**
715 Washington Avenue
Carnegie, PA 15106
(412) 278-1280
412-278-1282 (facsimile)

Joseph N. Kravec, Jr., Esquire
(PA ID No. 68992)
**SPECTER SPECTER EVANS
 & MANOGUE, P.C.**
The 26th Floor Koppers Building
Pittsburgh, PA 15219
(412) 642-2300
(412) 642-2309 (facsimile)

Joseph E. Fieschko, Jr., Esquire
**FIESCHKO & ASSOCIATES, INC.**
2230 Koppers Building
Pittsburgh, PA 15219
(412) 281-2204
(412) 338-9169 (facsimile)

*ATTORNEYS FOR PLAINTIFF AND THE PROPOSED CLASS*

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................ 1

II.  STANDARD OF REVIEW .......................................................................................... 2

III. ARGUMENT ............................................................................................................... 3

    A.    Plaintiff is not exempt from Pennsylvania's overtime payments requirements
           Pursuant to Pennsylvania's Outside Sales Exemption ...................................................... 3

           1.    Baum did not customarily and regularly engage in making sales. ........................... 5

           2.    Baum did not customarily and regularly engage in obtaining orders. ..................... 7

           3.    AstraZeneca's cited California cases are inapposite. .............................................. 8

           4.    Plaintiff was not compensated as an "outside salesman." ..................................... 11

    B.    Plaintiff was not exempt from the overtime provisions of the Pennsylvania
           Minimum Wage Act Pursuant to Pennsylvania's Administrative Exemption ............... 13

           1.    Plaintiff did not perform work related to the management policies or
                general business operations of AstraZeneca. ........................................................ 14

           2.    Defendant's classification of Plaintiff Baum as an outside salesperson
                belies the administrative exemption. ..................................................................... 16

           3.    PSSs do not exercise independent judgment and discretion as required
                 by the PMWA ...................................................................................................... 17

    C.    Baum's claims are not preempted by the Fair Labor Standards Act. ........................... 20

           1.    The FLSA does not expressly preempt state overtime laws. ................................. 21

            2.    Congress did not intend the Federal Government to occupy the field of
                 overtime laws exclusively, and neither the PMWA nor the PWPCL
                conflict with the FLSA ....................................................................................... 21

IV.  CONCLUSION .......................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...............................................................2

*Anderson v. United States*, 490 F.2d 921 (Ct.Cl.1974) *cert denied* 419 U.S. 827 (1974) ..............10

*Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388 (1960) ..................................................................3

*Barnick v. Wyeth*, 522 F.Supp.2d 1257 (C.D.Cal. 2007) ............................................................9

*Bell v Beneficial Consumer Discount Co.*, 348 A.2d 734 (Pa. 1975) .........................................24

*Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120 (9th Cir. 2002) .................................................17

*C.E.R. 1988, Inc., v. Aetna Cas. & Sur. Co.*, 386 F.3d 263 (3d Cir. 2004)................................21

*Carpenter v. R.M. Shoemaker Co.*, 2002 U.S. Dist. Lexis 8566 (E.D. PA 2002)........................14

*Caucci v. Prison Health Services, Inc.*, 153 F.Supp.2d 605 (E.D. Pa. 2001) .............................23

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)..........................................................................2

*Central Delivery Service v. Burch*, 355 F.Supp. 954 (D.C. Md. 1973) .....................................22

*Cipollone v. Liggitt Group, Inc.*, 505 U.S. 504 (1992) ............................................................20

*Commonwealth v. Stuber, et al*, 822 A.2d 870 (Pa. Cmwlth. 2003),
   *aff'd*, 859 A.2d 1253 (Pa. 2004) ...................................................................................3, 4, 14

*Corning Glass Works v. Brennan*, 417 U.S. 188 (1974)...............................................................3

*Cusumano v. Maquipan International, Inc.*, 2005 U.S. Dist. Lexis 30257 (M.D. FL 2005) ..........19

*D'Este v. Bayer Corporation*, 2007 U.S. Dist. Lexis 87229 (C.D.Cal. 2007) ...............................9

*Ellis v. Edward D. Jones & Co., L.P.*, 527 F.Supp.2d 439 (W.D.Pa. 2007)................................20

*English v. General Electric Co.*, 496 U.S. 72 (1990)...................................................................21

*Fields v. AOL Time Warner*, 261 F.Supp.2d 971 (W.D.Tenn. 2003) ..........................................9

*Friedrich v. U. S. Computer Service*, 974 F.2d 409 (3d Cir. 1992) .............................................3

*Friedrich v. U.S. Computer Services, Inc.*, 833 F.Supp. 470 (E.D. Pa. 1993)........................23, 24

*Green v. Fund Asset Mgt. L.P.,* 245 F.3d 214 (3d Cir. 2001) ........................................................21

*Haywood v. North American Van Lines, Inc.,* 121 F.3d 1066 (7th Cir. 1997)...........................17

*Idaho Sheet Metal Works, Inc., v. Wirtz,* 383 U.S. 190 (1966) ........................................................4

*Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186 (5th Cir.1988);
    *cert denied,* 488 U.S. 926 (1988)...........................................................................................2

*Keeley v. Loomis Fargo & Co.,* 11 F.Supp.2d 517 (D.N.J. 1998) ................................................22

*Lagrimas v. Marilyn Gossel,* 1993 U.S. Dist. Lexis 378 (D.C.Md. 1993)...................................22

*Martin v. Cooper Electric Supply Co.,* 940 F.2d 896 (3d Cir. 1991)...................................4, 14, 16

*Martin v. Malcolm Pirnie, Inc.,* 949 F.2d 611 (2d Cir. 1991),
    *cert denied* 506 U.S. 905 (1992).............................................................................................4

*McLaughlin v. Richland Shoe Co.,* 486 U.S. 128 (1988)..............................................................23

*Medtronic Inc., v. Lohr,* 518 U.S. 470 (1996)...............................................................................21

*Menes v. Roche Laboratories, Inc.,* 2008 U.S. Dist. Lexis 2008 (C.D.Cal. 2008) ............................9

*Nielsen v. Devry, Inc.,* 302 F.Supp. 2d 747 (W.D.Mich. 2003) .......................................................9

*Pacific Merchant Shipping Ass'n. v. Aubry,* 918 F.2d 1409 (9th Cir. 1990) .................................22

*Pettis Moving Co. v. Roberts,* 784 F.2d 439 (2d Cir. 1986)...........................................................22

*Platek v. Duquesne Club,* 961 F.Supp. 831 (W.D.Pa. 1994) .........................................................10

*Rau v. Darling's Drug Store, Inc.,* 388 F.Supp. 877 (W.D.Pa. 1975) .........................................5, 24

*Reich v. John Alden Life Ins. Co.,* 126 F.3d 1 (1st Cir. 1997)........................................................16

*Renfro v. Indiana Michigan Power Co.,* 370 F.3d 512 (6th Cir. 2004) ..........................................17

*Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218 (1947)..................................................................21

*Roe-Midgett v. CC Services, Inc.,* 2008 U.S. App. Lexis 96 (7th Cir. 2008)................................17

*Schaefer v. Indiana Michigan Power Co.,* 358 F.3d 394 (6th Cir. 2004) .................................10, 18

*Smith v. Hudson,* 600 F.2d 60 (6th Cir. 1979), *cert. denied,* 444 U.S. 986, (1979)..........................2

*Volvo GM Heavy Truck v. Key GMC Truck Sales,* 773 F. Supp. 1033 (S.D.Ohio 1991)...............2

*Walling v. General Industries Co.,* 330 U.S. 545 (1947)........................................................5

*Washington v. Fred's Stores of Tennessee, Inc.,* 427 F.Supp.2d 725 (S.D.Miss. 2006) .....................................21

*Williams v. W.M. A. Transit Co.,* 472 F.2d 1258 (D.C.Cir. 1972) ................................................22

*Wirtz v. Keystone Reader Service, Inc.,* 418 F.2d 249 (5th Cir. 1969) .....................................6, 7, 11

*Wolfslayer v. Ikon Office Solutions, Inc.,* 2004 U.S. Dist. Lexis 22625 (E.D. PA 2004) .............................15

## STATUTES AND OTHER AUTHORITIES

21 C.F.R. § 1304.22 ..............................................................................................12

29 C.F.R. § 205(a)................................................................................................14

29 C.F.R. § 541 ...................................................................................................16

29 C.F.R. § 541, *et seq.* ........................................................................................5

29 C.F.R. § 541.200 ..............................................................................................14

29 C.F.R. § 541.207(a)...........................................................................................17

29 C.F.R. § 541.207(b)(1)........................................................................................17

29 C.F.R. § 541.207(c)...........................................................................................17

29 C.F.R. § 541.207(c)(1)....................................................................................17, 18

29 C.F.R. § 541.207(d)(1)........................................................................................17

29 C.F.R. § 541.500(a)............................................................................................5

29 C.F.R. § 541.500(a)(1).....................................................................................5, 23

29 C.F.R. § 541.500, *et seq.* .............................................................................4, 5, 6

29 C.F.R. § 541.501(b)(c).........................................................................................6

29 C.F.R. § 541.504(a)(2).........................................................................................7

29 C.F.R. § 541.504(b)(2)........................................................................................11

29 Fed. Reg. 22160 (April 23, 2004) ..............................................................................23

29 Fed. Reg. 22162-63 (April 23, 2004) ...................................................................11, 16, 23

29 U.S.C. § 13(a)(1) ................................................................................................................ 10

29 U.S.C. § 13(b)(1) ............................................................................................................... 22

29 U.S.C. § 201 *et seq.* ...................................................................................................*passim*

29 U.S.C. § 213(a)(1) ........................................................................................................ 4, 5, 6

29 U.S.C. § 216(b) .................................................................................................................. 24

29 U.S.C. § 218(a) .............................................................................................................. 21, 22

29 U.S.C. § 255 ....................................................................................................................... 23

29 U.S.C. § 256 ....................................................................................................................... 24

34 Pa. Code § 231.43(b) .......................................................................................................... 24

34 Pa. Code § 231.81 ................................................................................................................. 1

34 Pa. Code § 231.83 ...................................................................................................... 1, 14, 16

34 Pa. Code § 231.83(1) ........................................................................................................... 14

34 Pa. Code § 231.83(5) ........................................................................................................... 14

34 Pa. Code § 231.85 .................................................................................................... 4, 5, 9, 23

34 Pa. Code § 231.85(1) ......................................................................................................... 5, 6

34 Pa. Code § 231.85(2) ......................................................................................................... 5, 7

43 P.S. § 333.101, *et seq* ........................................................................................................... 3

43 P.S. § 333.105(a)(5) .................................................................................................. 2, 3, 4, 23

43 P.S. § 333.105, *et seq.* .......................................................................................................... 4

43 Pa. C.S. § 5527(b) ............................................................................................................... 23

California Wage Order No. 4-2001 (2)(M) ................................................................................. 9

Fed. R. Civ. P 23 ..................................................................................................................... 20

Fed. R. Civ. P. 56(c) .................................................................................................................. 2

Pa.R.C.P. No. 1701 ............................................................................................................... 1, 24

Pennsylvania Minimum Wage Act, 33 Pa. §§ 333.01-333.105 ...............................................................*passim*

Pennsylvania Pharmacy Act at 63 P.S. § 390-2(8) ........................................................................................7

Pennsylvania Wage Payment Collection Law, 43 Pa. §§ 260.1-260.10 ....................................................1, 21

U.S. Const. art. IV, § 2 ...............................................................................................................................20, 22

# I. INTRODUCTION

On or about March 27, 2007, Plaintiff, Kristin Baum, filed the within lawsuit in the Court of Common Pleas of Westmoreland County, Pennsylvania. The case was filed as a class action pursuant to Pa.R.C.P. No. 1701, and sought damages for unpaid overtime compensation pursuant to the Pennsylvania Minimum Wage Act ("PMWA"), 33 Pa. §§ 333.01-333.105, and the Pennsylvania Wage Payment Collection Law ("PWPCL"), 43 Pa. §§ 260.1-260.10. In her Complaint, Baum defined the class as all individuals who worked as Pharmaceutical Sales Specialists ("PSS") for Defendant, AstraZeneca LP ("AstraZeneca") in Pennsylvania since March 27, 2004.

AstraZeneca removed this action to this Court, moved to dismiss the Complaint, and the parties then proceeded to take limited discovery focused primarily on class certification issues. Thereafter, Plaintiff filed her motion for class certification which is separately pending before this Court. AstraZeneca now files the instant Motion for Summary Judgment as to Plaintiff Baum's individual state wage claims based on the limited record adduced to date. AstraZeneca asserts three purported grounds for it motion, none of which warrants entry of summary judgment against Plaintiff Baum.

AstraZeneca's first two proffered grounds are that Plaintiff Baum is exempt from overtime under the "Outside Sales" exemption of 34 Pa. Code § 231.83 and the "Administrative" exemption provided in 34 Pa. Code § 231.81. Of course, Plaintiff Baum meets none of the elements required for either of these exemptions to apply. Plaintiff Baum clearly did not engage in "Outside Sales" or work in a "bona fide administrative capacity" under Pennsylvania law for AstraZeneca to classify her as exempt from overtime pay because: 1) Plaintiff Baum neither sold anything for AstraZeneca, nor did she promote AstraZeneca's products to persons who actually buy them or who commit others to buy them; and 2) she had no job duties related to the management or operations of the research, development, or manufacturing of AstraZeneca's drugs, which AstraZeneca identifies as its business. AstraZeneca's final ground for summary judgment as to Plaintiff Baum is FLSA preemption. However, neither this nor any other court has ever found that an individual plaintiff's state wage law claims are preempted where, as here, Plaintiff asserts only state wage law claims and brings no claim under the FLSA. For these reasons, as more fully described herein,

AstraZeneca's Motion for Summary Judgment as to Plaintiff Baum's individual state wage law claims should be denied.[1]

## II. STANDARD OF REVIEW

Defendant's Motion for Summary Judgment should be granted only if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

In passing on AstraZeneca's Motion, the Court must read the evidence and all inferences drawn therefrom in a light most favorable to Plaintiff. *Smith v. Hudson*, 600 F.2d 60 (6th Cir. 1979), *cert denied*, 444 U.S. 986, (1979). Summary judgment will not be granted if the dispute about a material fact is "genuine," that is if the evidence is such that a reasonable jury could return a verdict for the non-movant. *Anderson*, 477 U.S. at 248. The Court's function is not to weigh the evidence and determine the truth of the matters asserted, but to determine whether there is a genuine issue for trial. *Id*. at 249. The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided, that one party must prevail as a matter of law. *Volvo GM Heavy Truck v. Key GMC Truck Sales*, 773 F. Supp. 1033 (S.D.Ohio 1991)(*citing Anderson*, 477 U.S. at 251-252).

A non-movant faced with a Motion for Summary Judgment is not required to proffer its own competing summary judgment evidence to survive the motion, the non-movant may answer the summary judgment motion by arguing that the summary judgment evidence proffered by the movant raises a fact issue which must be resolved at trial. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186 (5th Cir.1988); *cert denied*, 488 U.S. 926 (1988).

---

[1]   Plaintiff's evidentiary references throughout this brief are made to deposition testimony and documents contained in the Declaration of Joseph N. Kravec, Jr. of Confidential Exhibits in Support of Plaintiff's Motion for Class Certification (Docket No. 56) and the Second Declaration of Joseph N. Kravec, Jr. of Non-Confidential Exhibits in Support of Plaintiff's Motion for Class Certification (Docket No. 51). As explained in the accompanying Affidavit of Joseph N. Kravec, Jr., the Declarations and the exhibits identified and attached thereto are specifically incorporated as part of Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

## III. ARGUMENT

**A.** **Plaintiff is not exempt from Pennsylvania's overtime payments requirements pursuant to Pennsylvania's Outside Sales Exemption**

AstraZeneca contends that its PSSs, such as Plaintiff, are "outside salespersons" and therefore exempt from Pennsylvania's overtime requirements pursuant to 43 P.S. § 333.105(a)(5), which provides an exemption from Pennsylvania's Minimum Wage and Overtime Requirements for any employee employed, "in the capacity of outside salesman (as such terms are defined and delineated from time to time by regulations of a Secretary)". 43 P.S. § 333.105(a)(5). However, AstraZeneca's corporate representatives concede that Plaintiff did not actually sell any AstraZeneca drug or product, and the prescribers with whom Plaintiff met do not actually purchase any drug or product from AstraZeneca and can not commit themselves or others to purchase any of AstraZeneca's drugs. Rather, prescribers merely prescribe drugs for patients which may or may not eventually result in the sale of a drug. It is the patients (not the prescribers) who actually purchase AstraZeneca drugs, and PSSs are prohibited from meeting with patients by AstraZeneca. It is therefore clear that under Pennsylvania law, Plaintiff and other PSSs are not "outside salespersons" exempt from overtime pay.

The requirements for proof of an exemption under the PMWA are similar to those applied under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA:)") and the PMWA is interpreted in light of Federal interpretations of similar statutory provisions. *Commonwealth v. Stuber, et al*, 822 A.2d 870, 873 (Pa. Cmwlth. 2003), *aff'd*, 859 A.2d 1253 (Pa. 2004). The United States Supreme Court has held that because the FLSA is a remedial act, as is the PMWA, 43 P.S. § 333.101, *et seq.*, its exemptions are to be narrowly construed. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *see also Stuber*, 822 A.2d at 873. The U.S. Supreme Court has also held that the application of an exemption under the FLSA is a matter of affirmative defense on which the employer has the burden of proof. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196, 197 (1974); *Ben Kanowsky, Inc.*, 361 U.S. at 392. It is the employer's burden to prove that the employees come within any overtime exemption claimed by the employer and any exemption from the FLSA must be proven plainly and unmistakably. *Friedrich v. U. S. Computer Service,*

974 F.2d 409 (3d Cir. 1992), *citing Martin v. Cooper Electric Supply Co.,* 940 F.2d 896 (3d Cir. 1991). *See also Martin v. Malcolm Pirnie, Inc.,* 949 F.2d 611 (2d Cir. 1991), *cert denied* 506 U.S. 905 (1992)(the employer, "must overcome the presumption that the ... exemption does not apply to its employees"); *Idaho Sheet Metal Works, Inc., v. Wirtz,* 383 U.S. 190, 206 (1966)(the burden of proving the exemption is on the employer, and if the record is unclear as to some exemption requirement, the employer will be held not to have satisfied his burden).

AstraZeneca claims Plaintiff is exempt from Pennsylvania's overtime requirements pursuant to 43 P.S. § 333.105(a)(5), which provides an exemption from Pennsylvania's Minimum Wage and Overtime Requirements for any employee employed, "in the capacity of outside salesman (as such terms are defined and delineated from time to time by regulations of a Secretary)". 43 P.S. § 333.105(a)(5). The Regulation published pursuant to 43 P.S. § 333.105, *et seq.,* is found at 34 Pa. Code § 231.85, which states as follows:

> "Outside salesman means an employee who is employed for the purpose of and who is customarily and regularly engaged more than 80% of work time away from the employer's place or places of business in the following manner:
>
> 1) Making sales, including any sale exchange, contract to sell, consignment for sale or other disposition or selling, and delivering articles or goods.
>
> 2) Obtaining orders or contracts for the use of facilities for which a consideration will be paid by the client or customer. In addition the employee may not spend more than 20% of the hours worked in any work week of a nature not directly related to and in conjunction with the making of sales; provided however, that work performed incidental and in conjunction with employees own outside sales or solicitations, including incidental deliveries and collections, shall not be regarded as non-exempt work.

The FLSA also contains an exemption from its minimum wage and overtime provisions for "outside sales" employees of 29 U.S.C. § 213(a)(1), as defined in 29 C.F.R. § 541.500, *et seq.* that are substantially identical to the terms of the PMWA at 43 P.S. § 333.105(a)(5).[2] The only significant difference between the PMWA and the Federal Regulation defining the term "employee employed in the capacity of outside salesman" is that the PMWA Regulation provides that the employee may not spend

---

[2] Although there is a paucity of Pennsylvania cases interpreting the outside sales exemption of the PMWA, Pennsylvania and Federal Courts can apply federal law to interpret the provisions of the PMWA that are parallel to the FLSA. *Stuber,* 822 A.2d 870.

4

more than 20% of the hours worked in any work week of a nature not directly related to or in conjunction with the making of sales. 34 Pa. Code 231.85(2). The Federal Regulation currently contains the more liberal standard requiring that selling be the employee's "primary duty". 29 C.F.R. § 541.500(a)(1), revised August 23, 2004.[3]

The Federal Regulation defining the term "employee employed in the capacity of outside salesman", currently states:

a)    The term "employee employed in the capacity of outside salesman" in section 13(a)(1) of the Act shall mean any employee:

        1)    Whose primary duty is:

                i)    making sales within the meaning of Section 3(k) of the Act, or

                ii)    obtaining orders or contracts for services for use of facilities for which a consideration will be paid by the client or customer; and

        2)    Whose is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

In order to qualify for exemption pursuant to 29 U.S.C. § 213(a)(1), an employee must meet all the tests outlined in 29 C.F.R. § 541, *et seq.*, *Walling v. General Industries Co.*, 330 U.S. 545, 547, 548 (1947); *Rau v. Darling's Drug Store, Inc.*, 388 F.Supp. 877, 881 (W.D.Pa. 1975). Here, Plaintiff is not an "outside salesman" because she never made any sales or obtained orders as defined by either Pennsylvania or Federal law.

**1.    Baum did not customarily and regularly engage in making sales.**

The Regulation defining "outside salesman" pursuant to the PMWA requires that to qualify for exemption, an employee must be employed for the purpose of and who is customarily and regularly engaged more than 80% of work time away from the employer's place of business "making sales." 34 Pa.

---

[3] "Primary duty" as defined in the Federal Regulation means only that the employee's "principal, main, major or most important duty, meets the requirements of 29 C.F.R. § 541.500(a). Prior to April 23, 2004, the Federal Regulation contained a 20% limitation on non- exempt work by outside sales employees for whom the exemption was claimed. (Title 29, 541 of the Code of Federal Regulations, revised, May, 1993). This prior rule is in accord with 34 Pa. Code § 231.85 that establishes a definitive limitation of 20% of the hours worked by the employee in performing work in which he/she is not making or performing sales related to his/her own sales. The 20% limitation on non-exempt work contained in the Pennsylvania Regulation is a much more stringent requirement than the primary duty requirement of the Federal Regulation.

Code § 231.85(1). The Regulations to the PMWA do not define the term "making sales" 34 Pa. Code § 231.85(1).

Title 29 Part 541 of the Code of Federal Regulations interpreting 29 § 213(a)(1) explains that making sales or obtaining orders means the following:

> (b) Sales within the meaning of Section 3(k) of the Act (FLSA) include the transfer of title to tangible property, and in certain cases of tangible and valuable evidences of intangible property. Section 3(k) of the Act (FLSA) states that "sale" or "sell" includes any sales, exchange, contract to sell, consignment for sale, shipment for sale or other disposition.

> (c) Exempt outside sales work includes not only the sales of commodities, but also "obtaining orders or contract for services or for the use of facilities for which a consideration will be paid by the client or customer." 29 C.F.R. § 541.501(b)(c).

Accordingly, neither Plaintiff nor any other AstraZeneca PSS makes any sales as AstraZeneca admits.

PSSs do not physically take orders or directly sell drugs to any individual person who eventually takes or purchases AstraZeneca's drugs. Deposition of Cindy Atha, taken February 28, 2008 ("Atha Dep."), pp. 18:17-20; 23:5-24:1; Deposition of Debra Martin Ventura, taken January 11, 2008 ("Ventura Dep."), 69:7-19; 371:19-372:10. Moreover, health care providers or prescribers that PSSs call on do not actually purchase drugs from AstraZeneca. Atha Dep., pp. 22:22-23:4; Ventura Dep., pp. 63:18-64:19; 73:20-74:22; 371:19-372:10. Rather, AstraZeneca requires its PSSs to meet with prescribers, to deliver a scripted message regarding the efficacy of its drugs and to ask the prescriber for a "commitment" to prescribe the AstraZeneca's drugs to appropriate patients, but that "commitment" is neither binding on the prescriber nor the patient as AstraZeneca concedes. Atha Dep., pp. 26:20-27:3, 59:3-25. A PSS calling on a prescriber does not make a "sale" as anticipated by the exemption and defined in the Regulations because there is no sale, exchange, contract to sell, consignment for sale, shipment for sale or any other disposition of AstraZeneca's drugs. *Id.*, pp. 32:4-34:18.

Other courts, considering whether a "commitment" to later purchase a product where it is incidental to a sale made by another person constitutes a sale under the FLSA, have held that it does not qualify as a sale. *See, e.g., Wirtz v. Keystone Reader Service, Inc*, 418 F.2d 249, 260 (5th Cir. 1969). In *Keystone*, employees visited the homes of prospective customers for Keystone's magazines, delivered a prepared talk

memorized from material provided by the employer, and attempted to induce the prospective customer to agree to subscribe to Keystone's magazines. *Id.* at 252-53. The alleged outside salesman would then ask the prospective customer to sign a written "commitment" in the form of an Order Card to agree that an order for the magazines would be entered. *Id.* Subsequently, a third party would contact the prospective customer and consummate the sale. *Id.*. The *Keystone* court held that "to the extent that [the employees] are engaged in promotional activities designed to stimulate sales which will be made by someone else the work must be considered nonexempt." *Id.* at 260 (quoting 29 C.F.R. § 541.504(a)(2)).

As in *Keystone*, Plaintiff and other PSSs called upon persons to obtain only a "commitment" but did not actually sell anything. Atha Dep., pp. 26:20-27:3. Unlike *Keystone*, Plaintiff did not obtain this "commitment" from any person who actually purchases anything from AstraZeneca. *Id.*, pp. 153:17-154:4. Also unlike *Keystone*, the "commitment" given to PSSs is not binding on the prescriber, and the prescriber can not commit anyone else to purchasing a drug. *Id.*, p. 59:3-25. Whereas the *Keystone* court found obtaining a written, binding "commitment" from actual purchasers of the employer's product to be nonexempt work, here the Court cannot find a nonbinding "commitment" from a person who does not purchase anything from AstraZeneca, and cannot actually commit another person to buy a product, to qualify as a sale. Atha Dep., pp. 21:22-23:4.[4]

## 2. Baum did not customarily and regularly engage in obtaining orders.

As neither Plaintiff nor any other PSS actually sell anything as AstraZeneca concedes, AstraZeneca attempts to substantiate the fact that Plaintiff Baum "made sales" by stating that she was engaged in "obtaining orders" pursuant to 34 Pa. Code § 231.85(2). In support of this contention, AstraZeneca quotes the definition for "prescription" found in the Pennsylvania Pharmacy Act at 63 P.S. § 390-2(8) which states that a "prescription means a written or oral order issued by a duly licensed medical practitioner in the course of his professional practice for a controlled substance, other drug or devise or medication which is dispensed for use by the consumer." AstraZeneca fails to also cite the definition contained in 63 P.S. §

---

[4] Additionally, a recent U.S. DOL Opinion Letter FLSA 2006-16, May 22, 2006, indicates soliciting promises of future charitable donations or "selling the concept" of donating to charity does not constitute a "sale" for purposes of the outside sales exemption.

390-2(2.1) which states: "Dispense" or "dispensing" means the preparation of a prescription or non prescription drug in a suitable container or appropriately labeled for subsequent administration to or used by a patient or other individual entitled to receive the drug." Thus, the prescription written by the health care provider is not an "order" by the health care provider to purchase an AstraZeneca product, it is an instruction to the pharmacist to "dispense" the drug mentioned. PSSs cannot be deemed to be "taking orders" pursuant to the Regulation by obtaining non-binding commitments from a prescriber to write prescriptions for AstraZeneca drugs.

Indeed, AstraZeneca's corporate representative acknowledged that Plaintiff did not "obtain orders" for drugs from prescribers. Atha Dep., 32:4-18. Indeed, the actions of PSSs with regard to their contact with prescribers is so remote from the actual purchase of AstraZeneca drugs that the eventual "sale" of AstraZeneca's drugs cannot be attributed to any PSS, including Plaintiff. *Id.*, pp. 39:5-43:9. The process that AstraZeneca considered to be a qualifying "sale" in order for the PSSs to meet the terms of the Pennsylvania Outside Sales exemption is that when and if the prescriber writes a prescription for an AstraZeneca drug being presented by a PSS for an appropriate patient, and the patient takes the prescription to a pharmacist, who then fills the prescription. For the pharmacist to obtain the AstraZeneca drug in question, he/she then purchases a supply from a drug wholesaler who has purchased the drug from AstraZeneca. Ventura Dep., pp. 68:22-71:7. A PSS does not contact consumers, does not call upon drug wholesalers, and calls upon pharmacists only to determine if a pharmacist stocks an AstraZeneca drug with which the PSS is involved. *Id.*, pp. 37:23-43:18, 50:12-19. A PSS never is in contact with the actual purchaser of an AstraZeneca drug. *Id.*, pp. 68:8-71:1 Atha Dep., pp. 33:23-34:18; Deposition of Kristin Baum taken March 4, 2008 ("Baum Dep."), p. 174:1-23.

3.      **AstraZeneca's cited California cases are inapposite.**

AstraZeneca also cites three actions brought under California law against drug company employers by Plaintiffs whose jobs were substantially similar to Baum's, in support of its contention that Baum and putative Plaintiff PSSs were engaged in "making sales." These cases are inapposite because California law differs from Pennsylvania in terms of what is considered an outside salesperson, and because California

courts rely on a different standard for what determines what a salesperson is. Indeed, none of these cases considered the undisputed facts in Plaintiff's action where she did not sell anything to any prescriber, prescribers do not purchase any drugs from Plaintiff or from AstraZeneca, and prescribers cannot commit any other person to purchase any of AstraZeneca's drugs.

California law differs significantly from the Pennsylvania Statute and Regulations. California applies the outside sales exemption where an employee's "primary duty" is to make sales and to perform work incidental to their own sales, while Pennsylvania requires that such activity compiles more than 80% of the time worked by the employee for the exemption to apply. 34 Pa. Code § 231.85. *Compare* California Wage Order No. 4-2001 (2)(M)("any person, eighteen years of age or over, who customarily or regularly works more than half the working time away from the employer's place of business, selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities", is exempt from California's overtime provisions as an outside sales person). The 20% limitation on non-exempt work contained in the Pennsylvania Regulation is a much more of a bright line requirement than California's law.

Second, all three California cases cited by AstraZeneca relied upon <u>indicia</u> of what an outside sales position may consist of in terms of the incumbent's experience, the job being advertised as a sales position, whether the incumbent got specialized sales training, whether the job entails soliciting new business, whether the incumbent received little or no direct supervision in carrying out daily work tasks and the person was called the salesperson. *See Menes v. Roche Laboratories, Inc.,* 2008 U.S. Dist. Lexis 2008 (C.D.Cal. 2008); *D'Este v. Bayer Corporation,* 2007 U.S. Dist. Lexis 87229 (C.D.Cal. 2007); *Barnick v. Wyeth,* 522 F.Supp.2d 1257 (C.D.Cal. 2007). However, under the applicable law here, it is the actual job duties and actions performed by the employee that are dispositive of whether the exemption applies, and not their job titles or other "indicia" of what an outside sales position consists of. *Fields v. AOL Time Warner,* 261 F.Supp.2d 971 (W.D.Tenn. 2003); *Nielsen v. Devry, Inc.,* 302 F.Supp. 2d 747 (W.D.Mich. 2003).

Accepting AstraZeneca's position that the characterization of a job in its advertisement, the background and experience of the employee, the training received by the employee, the method by which the employee is paid, and the amount of supervision at which the employee works is determinative of the application of an exemption pursuant to 29 U.S.C. § 13(a)(1), while ignoring the actual duties performed by the employee, would lead to an absurd result. Such a result would allow employers to avoid paying the minimum wage and overtime to employees with extensive background, experience and education based simply on the title of the job in which they were incumbent, the training they received and their method of pay without considering that they actually perform mundane duties that do not qualify them for the exemption. Such an absurd construction of the provisions of a statute should be avoided. *Anderson v. United States,* 490 F.2d 921, 928 (Ct.Cl.1974) *cert denied* 419 U.S. 827 (1974); *Platek v. Duquesne Club*, 961 F.Supp. 831 (W.D.Pa. 1994).

Instead, in analyzing the primary duty of an employee claimed to be exempt, a court must focus on the "day to day activities of the employee, rather than more general job descriptions contained in resumes, position descriptions and performance evaluations." *Schaefer v. Indiana Michigan Power Co.,* 358 F.3d 394 (6th Cir. 2004). Here, Plaintiff's job duties and day to day activities show conclusively that she was not an "outside salesman" because she did not, in any way, consummate sales, take orders or obtain commitments from any actual purchaser of AstraZeneca's products. Ventura Dep., pp. 63:18-64:19; 73:20-74:22; 371:19-372:10; Atha Dep., pp. 22:22-23:4.

Even if this Court were to look at the indicia the California courts looked to in determining those plaintiffs were "outside salesmen" under California law, which this Court should not do under Pennsylvania law, AstraZeneca cannot show that even the same indicia are met in Plaintiff's case. Baum was hired as an administrative assistant working in customer relations and as a sales analyst before later becoming a PSS. Baum Dep., pp. 9:19-10:11, 48:15-51:25 76:18-77:25. She had no sales experience prior to being hired by AstraZeneca, and the only training in "selling" she received by AstraZeneca was perfunctory in that it consisted of delivering a prepared speech to AstraZeneca employees pretending to be doctors. *Id.* The training received by Baum and other PSSs was heavily concentrated in product

knowledge, not in sales. Baum Dep., p. 76:5-14. Training received regarding presentations to HCPs involved providing them with the latest slogans and canned speeches. Baum Dep., pp. 205:2-207:2. Therefore, even though Defendant's cited cases stating other pharmaceutical representatives working for other companies are considered outside salespersons under California law, the same is not true for Plaintiff Baum under Pennsylvania law, even assuming California's indicia test.

### 4. Plaintiff was not compensated as an "outside salesman."

The method by which Plaintiff was paid by AstraZeneca further emphasizes that PSS are not "making sales" and are not outside salespersons pursuant to the PMWA. AstraZeneca concedes that it can not determine why a doctor may prescribe one of AstraZeneca drugs due to the fact that information regarding the drugs comes to patients and doctors for reasons having nothing to do with the presentations of the PSSs to the prescriber. Atha Dep., pp. 48:9-49:23, 56:21-59:2. AstraZeneca also admits that it cannot link a "commitment" received from a prescriber as the reason why the doctor prescribes its drugs, but some prescribers will purport to give this "commitment" to simply get the PSS out of their office. Atha Dep., p. 59:3-25. AstraZeneca cannot determine why its drug was prescribed to a particular patient and cannot determine whether any prescription was written because of the activities of its PSS employees. Atha Dep., pp. 39:5-43:9. At best, the activities of the PSSs are intended to stimulate the sale of AstraZeneca's products generally rather than the consummation of their own specific sales. Such activities are not exempt. 29 C.F.R. § 541.504(b)(2), Revised May 1993; Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees; Final Rule, 29 Fed. Reg. 22162-63 (April 23, 2004)(29 C.F.R. pt. 541); see also Keystone, 418 F.2d at 260.

Plaintiff Baum, like other PSSs, was paid a base salary and was eligible to receive a bonus in addition to her salary pursuant to AstraZeneca's "Field Incentive Plan" based on the general market trend for AstraZeneca's drugs in the territory in which she worked. Ventura Dep., pp. 394:7-395:22. The bonus is not based on sales data specific for an individual PSS. Id. That AstraZeneca relies on generic sales generated on a territory basis to determine the amount of bonus given to its PSSs as a team is indicative of the fact that the activities of PSSs are to promote the sales of AstraZeneca products generally in their area

of responsibility. AstraZeneca recognizes that the PSS bonuses are based on in increase in the market share of a drug as opposed to individual "sales" and is the result of AstraZeneca's "marketing mix" which results in sales from patients at a pharmacy. *Id.*, pp. 400:13-401:19. AstraZeneca has acknowledged that a PSSs incentive bonus is not based on the individual promotional efforts of any PSS; rather, it is based on a change in the market share of the drug relative to AstraZeneca's competitor drugs which results from all of AstraZeneca's local and nationwide marketing campaign. *Id.*, pp. 397:19-408:10; Atha Dep., pp. 44:9-23, 56:21-59:2.

Additionally, AstraZeneca's admits that it does not have records of any individual alleged "sale" by Plaintiff or any other PSSs. If prescribers actually were recipients of AstraZeneca's drugs as a result of the presentations by PSSs, AstraZeneca is required to record "the number of commercial containers distributed to other persons, including the date and number of containers in each reduction from inventory and the name, address, registration number of the person to whom the containers were distributed." A "commercial container" is defined as a hundred tablet bottle or 3 milliliter vial. 21 C.F.R. § 1304.22(2)(ii)(vii). AstraZeneca has presented no such records in support of its contention that PSSs make "sales" in the regulated atmosphere in which it operates. Therefore, AstraZeneca does not consider the "commitments" made by PSSs to be distributions to the prescribers and cannot now claim that the commitments are transactions within the definition of sales pursuant to § 3(k) of the FLSA.

Under Pennsylvania law, it is evident that Plaintiff's position with AstraZeneca here was not exempt from overtime pay as an outside salesman. Pennsylvania law requires that an "outside salesman" either sell something or obtain orders to sell something which Plaintiff never did. AstraZeneca's corporate representatives concede that PSSs do not actually sell any of AstraZeneca's drugs or products. Atha Dep., p. 23:5-16. Additionally, the people PSSs promote to – i.e. prescribers – do not actually buy anything from AstraZeneca and cannot commit any other person to purchase an AstraZeneca drug. *Id.*, pp. 22:22-23:4; Ventura Dep., pp. 63:18-64:19; 73:20-74:22; 371:19-372:10. It is therefore clear that under Pennsylvania law, Plaintiff and other PSSs are <u>not</u> "outside salespersons" exempt from overtime pay.

**B.** **Plaintiff was not exempt from the overtime provisions of the Pennsylvania Minimum Wage Act Pursuant to Pennsylvania's Administrative Exemption**

AstraZeneca's Concise Statement of Undisputed Material Facts establishes that "AstraZeneca is engaged in the business of **research, development,** and **manufacturing** of pharmaceutical products designed to fight disease in major areas of healthcare." Defendant's Concise Statement of Undisputed Material Facts, No. 1 (emphasis added). Plaintiff Baum clearly did not work in a "bona fide administrative capacity" under Pennsylvania law for AstraZeneca to classify her as exempt from overtime pay because she had no job duties related to the management or operations of the research, development, or manufacturing of AstraZeneca's drugs. Plaintiff simply promoted their products to prescribers who did not purchase any drugs, did not commit to purchasing any drugs, and did not commit anyone else to purchase any drugs. In this promotional role, Plaintiff was required to memorize scripted presentations and deliver them to prescribers, order breakfast and lunch meals for health care providers and their staffs, and refer any issues not specifically addressed by the prescribing information directly to AstraZeneca's corporate physicians. As Plaintiff's promotional activities described herein, which are undisputed by either party, have absolutely nothing to do with the management or operations of the research, development or manufacturing of AstraZeneca's drugs, Plaintiff can not be found to be exempt from overtime pay under the administrative exemption.

Pursuant to the PMWA, an employee employed in a bona fide administrative capacity means work by an individual:

1) Whose primary duty consists of the performance of office or non-manual work directly related to the management policies of general business operations of his employer or the customers of the employer;

2) Who customarily and regularly exercises discretion and independent judgement;

3) Who regularly and directly assists an employer or employee employed in a bona fide executive or administrative capacity, who performs under only general supervision work along specialized or technical lines requiring special training, experience or knowledge, or who execute under only general supervision special assignments and tasks;

4) Who does not devote more than 20% of time worked in a work week, or, in the case of an employee of a retail service establishment, who does not devote more than

40% of time worked in a work week to activities which are not directly and closely related to the performance of work, described in paragraphs (1)(3);

5) Who is paid for his services of his salary of not less than $155 per week, exclusive of board, lodging, or other facilities, provided that an employee was compensated on a salary or fee basis at a rate not less than $250 per week, exclusive of board, lodging, or other facilities and whose primary duty consists of the performance of work described in paragraph (1), which includes work requiring the exercise of discretion and independent judgment shall be deemed to meet all of the requirements of this section.

34 Pa. Code § 231.83. It is not contested that PSSs are paid salaries in excess of $250 per week, exclusive of board, lodging or other facilities, or that Plaintiff's base salary was $63,000 a year. Therefore, the application of the exemption to PSSs will be evaluated pursuant to 34 Pa. Code § 231.83(1) and (5).

As with the outside sales exemption, the PMWA is interpreted in light of the FLSA when the provisions of those statutes are identical or substantially similar. *Stuber, supra*, 822 A.2d 870. Prior to the Federal Regulation Title 29, Section 541.2 being revised as of August 23, 2004, the Federal Regulation and State Regulation defined "administrative employee" in substantially the same terms. Effective August 23, 2004, the Federal Regulation was revised eliminating the two tier test depending on the salary level of the employee, but retaining the basic similarity of the two Regulations. 29 C.F.R. § 541.200, Revised August 23, 2004.

1. **Plaintiff did not perform work related to the management policies or general business operations of AstraZeneca.**

In order for the "Administrative" exemption of the PMWA to apply to an employee, he/she must have as his/her primary duty work which consists of the performance of non-manual work directly related to the management policies or general business operations of his/her employer or his/her employer's customers. 34 Pa. Code § 231.83(1). The phrase limits the exemption to persons who perform work of "substantial importance to the management or operation of the business" of the employer. *Carpenter v. R.M. Shoemaker Co.*, 2002 U.S. Dist. Lexis 8566 (E.D. PA 2002); 29 C.F.R. § 205(a). Only employees whose work substantially affects the structure of an employer's management policies and business operations can be characterized as an administrative employee. *Martin v. Cooper Electric Supply Co.*, 940

F.2d 896, 906 (3d Cir. 1991); *Wolfslayer v. Ikon Office Solutions, Inc.,* 2004 U.S. Dist. Lexis 22625 (E.D. PA 2004).

AstraZeneca has presented no evidence that its business operations are significantly affected by the work of PSSs and has failed to meet its burden in regard to that requirement of the administrative exemption. Defendant's Brief, pp. 17-18. Indeed, Defendant cannot as Plaintiff did not perform work of "substantial importance to the management or operation" of AstraZeneca's business. This is because "AstraZeneca is engaged in the business of **research, development,** and **manufacturing** of pharmaceutical products designed to fight disease in major areas of healthcare", and not in the business of promotion which is all Plaintiff did. Defendant's Concise Statement of Undisputed Material Facts, No. 1 (emphasis added). Indeed, AstraZeneca contends Plaintiff "spent the vast majority of her time on the road, making sales calls on physicians." Defendant's Brief, p. 1. See also Defendant's Concise Statement of Undisputed Material Facts, Nos. 60-64 (stating Plaintiff's primary duty, which she spent nearly 100% of her time doing, was promoting AstraZeneca's products).

Plaintiff and all other PSSs were low level employees hired to promote AstraZeneca's drugs to physicians, not run the company. Atha Dep., Pp. 112:5-114:3 (AstraZeneca has established detailed rules which PSSs must follow, in addition to FDA Regulations, or be subject to discipline). Plaintiff had no duty related to the management of AstraZeneca; rather, Plaintiff only used methods, materials, and scripted statements approved by AstraZeneca's management when discussing drugs with prescribers. Ventura Dep., pp. 104:14-105:2, 216:13-22; Atha Dep., pp. 75:14-23, 112:5-15, 147:8-12, 152:1-11, 158:23-159:2, 174:5-17.

Neither can Plaintiff be said to have serviced AstraZeneca's business of research, development and manufacturing of drugs as PSSs contribute nothing to these general business operations of AstraZeneca. Their duties are narrow and very specific. PSSs carry out a small portion of the marketing scheme of AstraZeneca which consists of television spots, print media and in Plaintiff's case, human advertisement of the qualities and uses of AstraZeneca products. No PSS creates or even edits the materials Plaintiff used in

her presentations. Ventura Dep., pp. 104:14-105:2, 216:13-22; Atha Dep., pp. 75:14-23, 112:5-15, 147:8-12, 152:1-11, 158:23-159:2, 174:5-17.

Indeed, by AstraZeneca's argument that Plaintiff is an outside sales employee and its argument regarding the administrative exemption that PSSs "promote sales," it is reasonable to conclude that the impact of Plaintiff's work was solely financial in AstaZeneca's estimation. To the extent Plaintiff's promotions may have impacted on AstraZeneca's operations in some way, AstraZeneca cannot prove that the ultimate sale of AstraZeneca's drugs that is so remote from Plaintiff's activity is affected by that activity. The financial effect of an employee's activity cannot alone show work of "substantial importance to the management or operation of an employer's business." *Reich v. John Alden Life Ins. Co.,* 126 F.3d 1 (1st Cir. 1997).

### 2. Defendant's classification of Plaintiff Baum as an outside salesperson belies the administrative exemption.

An employee exempt from overtime pay under the bona fide administrative exemption must perform work directly "related to the management or general business operations." This refers to "the type of work performed by the employee" and requires that the exempt administrative employee "perform work related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing or production line or selling a product." 29 Fed. Reg. 22140 (April 23, 2004). Employees engaged in making "wholesale sales" do not constitute administrative type "servicing" administrative type work within the meaning of 29 C.F.R. § 541. *Martin,* 940 F.2d 896.

Despite AstraZeneca's assertion that Plaintiff's work somehow "related to the management or general business operations" of the research, development and manufacturing of pharmaceutical drugs, AstraZeneca states that "Baum spent the vast majority of her time on the road, making sales calls on physicians..." (Defendant's Brief P.1). If, as AstraZeneca claims, Plaintiff was actually "making sales" within the meaning of the PMWA sales exemption, she was not performing work within the meaning of the administrative exemption of the PMWA when she spent the "vast majority of her time on the road making sales calls on physicians..." Therefore, if AstraZeneca's argument that Plaintiff is an outside salesperson,

16

which Plaintiff vigorously contests, directly contradicts its alternative argument that Plaintiff is exempt under the bona fide administrative exemption.

### 3. PSSs do not exercise independent judgment and discretion as required by the PMWA

Plaintiff's duties are subject to the "short test" of 34 Pa. Code § 231.83, which requires that to be exempt as an administrative employee, the duties of the employee must include "work requiring the exercise of discretion and independent judgment." Here, Plaintiff exercised no discretion and independent judgment when it came to her job promoting AstraZeneca's drugs to prescribers.

The exercise of discretion and independent judgment has been defined as "the comparison and evaluation of possible courses of action and acting or making a decision after the various possibilities have been considered." The phrase also "implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." *Roe-Midgett v. CC Services, Inc.*, 2008 U.S. App. Lexis 96 (7th Cir. 2008); *Renfro v. Indiana Michigan Power Co.*, 370 F.3d 512 (6th Cir. 2004); 29 C.F.R. § 541.207(a) 1983. The exempt employee must exercise discretion and independent judgment which is "real and substantial." 29 C.F.R. § 541.207(d)(1) 1983. "Perhaps the most frequent cause of misapplication of the term 'discretion and independent judgment' is the failure to distinguish it from use of skill in various respects." *29 C.F.R.* § 541.207(c) 1983. The misapplication of the independent judgment and discretion test occurs most frequently from the failure of to distinguish discretion and judgment from use of skill. "An employee who merely applies his knowledge in following prescribed procedures or determine which procedures to follow... is not exercising discretion and independent judgment within the meaning of § 541.2." *Haywood v. North American Van Lines, Inc.*, 121 F.3d 1066 (7th Cir. 1997); 541.207(c)(1) 1983.

The fact that an employee's work requires a great deal of specialized knowledge and skill is not determinative of the applicability of judgment and discretion. The Regulation specifically warns against confusing the exercise of discretion and independent judgment with the use of skill in applying techniques, procedures or specified standards. *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120 (9th Cir. 2002); 29 C.F.R. § 541.207(b)(1).

Plaintiff, in her role as a PSS, did not exercise independent judgment and discretion within the above stated principles. Plaintiff could not choose which prescribers to visit. Baum Dep., pp. 187:15-188:2; Atha Dep. pp. 116:10-117:19. Plaintiff could not create or even edit written materials used for promoting AstraZeneca's drugs. Ventura Dep., pp. 229:22-230:3.[5] Plaintiff could not deviate from AstraZeneca's script and written materials in her presentations. Atha Dep., pp. 158:23-159:2; Baum Dep., pp.120:20-121:13, 253:5-254:9. If a physician initiated any conversation that is not provided for in the approved materials (i.e. an off-label use of a drug), Plaintiff could not discuss the topic with the doctor. Atha Dep., p. 159:11-23. Not only could Plaintiff face disciplinary action from AstraZeneca for using non-approved materials, but by not following AstraZeneca's rules regarding using only approved materials, a PSS could face criminal prosecution. Baum Dep., pp. 253:5-254:9.

If a physician asks a question that is within the scripted material provided to the PSSs by AstraZeneca, the PSS decides which portion of the material is appropriate to respond to the inquiry, and so advises the doctor. Questions from prescribers which were not answerable from the scripted materials had to be referred to AstraZeneca directly. Baum Dep., pp. 205:2-207:2. In responding to physicians questions that are answerable from the scripted material, the PSS is simply using his/her skill and the application of his/her knowledge of the material in determining whether the question falls into one or another of the bits of information available. "Merely applying knowledge in following the prescribed procedures or determining which procedures to follow or determining whether specified standards are met." is not considered to be the exercise of independent judgment and discretion within the meaning of the exemption. *Schaefer v. Indiana Michigan Power Co.*, 358 F.3d 394 (6th Cir. 2004); quoting 29 C.F.R. § 541.207(c)(1) 1983.

Additionally, Plaintiff's lack of independent judgment and control are evidenced by AstraZeneca's oversight over every bit of minutia Plaintiff did throughout her day. AstraZeneca imposed uniform work expectations on Plaintiff and all other PSSs mandating how and when Plaintiff was to work. Atha Dep., p.

---

[5] All the materials PSSs use in promoting AstraZeneca's drugs must be approved through its eSTaR process where approval is given by AstraZeneca's marketing and legal teams to ensure they comply with drug labeling laws prior to use by any PSS. Atha Dep., pp. 151:10-152:19

56:11-21. These expectations were dictated by AstraZeneca's senior management and were mandatory requirements of Plaintiff's job. *Id.*, pp. 62:19-25; 106-107. These expectations include when Plaintiff must meet with prescribers (*Id.* at p. 67:7-11); the number of days Plaintiff had to be meeting with prescribers (*Id.*, p. 65:14-17); and the number of times a day, and the time of day, Plaintiff had to check her voice mail and email. *Id.*, pp. 136:10-137:1. If any PSS fails to follow these requirements, the PSS can be disciplined and potentially fired. *Id.*, pp. 106-107;

In the situation where an employee purported to be exempt as administrative employee exercising independent judgment and discretion was controlled by his employer in a manner similar to the control exercised by AstraZeneca over Plaintiff, controlling for example, the number of hours she had to spend in the field, the number of times a day she was required to check her e-mails, the reporting of their visits with physicians, the list of physicians on whom she was to call, the scripted materials she was to use without discretion to change or even highlight, was found not to be exercising "independent judgment and discretion" within the meaning of the exemption. *Cusumano v. Maquipan International, Inc.*, 2005 U.S. Dist. Lexis 30257 (M.D. FL 2005). In all fairness, PSSs exercise some judgment in discretion in the performance of their duties, although only on entirely menial tasks. Plaintiff was able to decide to utilize a breakfast or lunch in order to possibly obtain a meeting with the physician, and could decide on whether to bring pizza or sandwiches or breakfast food depending on the time of day in expectations of the employees of the physician. Baum Dep., pp. 142:21-143:3; 170:17-171:21.

Clearly, AstraZeneca cannot meet its burden that Plaintiff exercised "independent judgment and discretion" regarding significant matters and the final prong of the administrative exemption is not met when she could not: 1) choose the physicians she was promoting to; 2) use her own visual aids or materials to promote these drugs; 3) speak off of a given script and answer questions a doctor might have about a drug; or 4) make even some of the most minor of decisions without fear of being disciplined. Any "independent judgment and discretion" she could use was for decisions are not made in regard to "matters of significance" as required by the regulation. For all of these reasons, AstraZeneca's Motion for Summary Judgment regarding the administrative exemption of the PMWA must be denied.

19

**C.** **Baum's claims are not preempted by the Fair Labor Standards Act.**

As a last ditch effort to have Plaintiff's individual state law claims dismissed, AstraZeneca argues it should prevail on summary judgment because "the FLSA's Section 216(b) states that no employee shall be a party plaintiff to any such FLSA overtime action unless he gives his consent in writing to become such a party." Defendant's Brief, p. 21 (internal quotation omitted). This despite the fact Plaintiff brought an individual claim for overtime pay under Pennsylvania law, in a Pennsylvania court, specifically evidencing her individual intention to be a "party plaintiff" against AstraZeneca in her overtime action. To the extent AstraZeneca rehashes its position that Plaintiff's claims should be dismissed as to those people who have not opted into Plaintiff's state law claims, even though no such requirement exists under Pennsylvania law, and even though this pending motion is to dismiss Plaintiff's individual claims and not her class allegations, Plaintiff refers the Court to her arguments in response thereto. *See* Docket Nos. 25, 41.

To the extent AstraZeneca's relies on *Ellis v. Edward D. Jones & Co., L.P.* 527 F.Supp.2d 439 (W.D.Pa. 2007)(Gibson, J.) for the proposition that Plaintiff's individual state law claims are preempted under the idea of "obstacle preemption," Defendant's reliance is clearly misplaced. *Id.* at 449 (this Court specifically did not hold that the FLSA is the sole remedy for enforcement of the rights guaranteed by the FLSA). In *Ellis*, this Court found that the FLSA's mandatory opt-in mechanism directly conflicted with a state's opt-out mechanism under Fed. R. Civ. P 23, and thus preempted an attempt by several plaintiffs to bring both state and federal overtime claims. *Ellis*, 527 F.Supp.2d at 452. This Court specifically restricted its holding to actions with parallel state and federal actions which overlap with the FLSA. *Id.* at 451-52. *Ellis* did not find that an individual's claim, brought only under Pennsylvania law to collect unpaid overtime, was preempted by the FLSA.

AstraZeneca claims that this Court should grant summary judgment to it against Plaintiff's individual state law claims based on the idea that the FLSA completely preempts all claims by all employees brought under state law based on the Supremacy Clause of the Constitution. Defendant's Brief, pp. 22-25; *see also* U.S. Const. art. IV, § 2. When considering issues arising out of the Supremacy Clause, the analysis starts with the assumption that the historic police powers of the States are not to be superseded

by a Federal Act unless that is the clear and manifest purpose of Congress, *Cipollone v. Liggitt Group, Inc.,* 505 U.S. 504, 516 (1992), *citing Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230 (1947)(quotation omitted). There are three forms of preemption pursuant to the Supremacy Clause, express, field and conflict. *English v. General Electric Co.,* 496 U.S. 72, (1990). Here, none of these forms of preemption apply to Plaintiff's PMWA claims.

### 1. The FLSA does not expressly preempt state overtime laws.

Express preemption is found where Congress explicitly defines the extent to which state law is preempted by its action. *English,* 496 U.S. at 78. The Supreme Court has urged caution in the application of conflict preemption; because "the States are independent sovereigns in our Federal system. *Medtronic Inc., v. Lohr,* 518 U.S. 470, 485 (1996). The Court will deem state law preempted only if it is the clear and manifest purpose of Congress. *Green v. Fund Asset Mgt. L.P.,* 245 F.3d 214 (3d Cir. 2001). Here, there is no express Congressional intent to preempt State Law actions for minimum wages and overtime as there is no express language in the FLSA stating that Congress intended to explicitly preempt state overtime wage laws. *See Washington v. Fred's Stores of Tennessee, Inc.,* 427 F.Supp.2d 725, 728 (S.D.Miss. 2006)(the FLSA contains no express preemption).

### 2. Congress did not intend the Federal Government to occupy the field of overtime laws exclusively, and neither the PMWA nor the PWPCL conflict with the FLSA

In the absence of explicit statutory language, state law is preempted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively, where it is impossible for a private party to comply with both State and Federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purpose and objective of Congress. *English,* 496 U.S. at 79. The presumption remains against conflict preemption under *English* where the area of law is not exclusively Federal. *C.E.R. 1988, Inc., v. Aetna Cas. & Sur. Co.,* 386 F.3d 263, 268 (3d Cir. 2004). Here, Congress has demonstrated that it had no intention of exclusively dominating the field of regulation of minimum wage and overtime compensation by the inclusion of the "savings clause" of Section 218(a) of

the Fair Labor Standards Act which expressly permits as states to enact wage and hour laws with superior provisions to the FLSA.

In considering the issue of whether the FLSA preempts State Wage and Hour Law, the Courts have looked to the savings clause of 29 U.S.C. § 218(a) and interpreted that Section as evidence of the intent of Congress not to preempt State regulation of hours and wages. Section 218(a) expressly contemplates that workers covered by State Law, as well as the FLSA, shall have any additional benefits provided by State Law. It permits State Laws to operate in the different applications of exemptions under State Law versus the FLSA. *Keeley v. Loomis Fargo & Co.*, 11 F.Supp.2d 517 (D.N.J. 1998)(holding that an exemption for employees subject to the Motor Carrier Act pursuant to Section 13(b)(1) of the FLSA did not preempt the New Jersey Wage and Hour Law which contained no such exemption). *See also, Lagrimas v. Marilyn Gossel*, 1993 U.S. Dist. Lexis 378, 3 (D.C.Md. 1993)(denying Defendant's claim that FLSA exemption for domestic employees preempted the more stringent Maryland Law providing for overtime compensation requirements for such employees).

Congress did not prevent the States from regulating overtime wages paid to workers exempt from the FLSA. Section 218(a) explicitly permits States to set more stringent overtime provisions than the FLSA. *Pettis Moving Co. v. Roberts*, 784 F.2d 439, 441 (2d Cir. 1986)(citing *Williams v. W.M. A. Transit Co.*, 472 F.2d 1258, 1261 (D.C.Cir. 1972)). *See also Pacific Merchant Shipping Ass'n. v. Aubry*, 918 F.2d 1409 (9th Cir. 1990)(holding that the savings clause of the FLSA allowed California to apply its more generous pay laws to employees on high seas whether or not employees were exempted from FLSA's overtime provisions); *Central Delivery Service v. Burch*, 355 F.Supp. 954 (D.C. Md. 1973)(Maryland overtime law did not conflict with the Motor Carrier Act and FLSA in violation of the Supremacy Clause in its application to employees of Maryland based motor carrier).

It is manifestly clear that State Wage and Hour Laws will not be preempted by the FLSA when they contain provisions superior to those of the FLSA. That is exactly the situation in the within case. The protection afforded to Baum under the PMWA is superior to that of the FLSA in several areas. First, AstraZeneca has claimed Baum to be exempt from the overtime requirements of the PMWA, pursuant to an

22

exemption for any employee employed, "in the capacity of Outside Salesman (as such terms are defined and delineated from time to time by regulation of the Secretary)". 43 P.S. § 333.105(a)(5). Pennsylvania's definition of the Outside Sales exemption includes the requirement that "...the employee may not spend more than 20% of the hours worked in any work week of a nature not directly related to and in conjunction with the making of sales...". 34 Pa. Code § 231.85.

The Federal Regulation regarding the FLSA exemption for Outside Sales employees contains a much more liberal standard for employers seeking to prove the exemption, requiring simply that selling be the employee's "primary duty". 29 C.F.R. § 541.500(a)(1), revised August 23, 2004. The "primary duty test" is met if the employee's "principal, main, major or most important duty" involves sales, whereas the definitive limitation of 20% of the hours worked by the employee in performing work in which he/she is not making sales or performing work related to his/her own sales constitutes a much more stringent test. The Department of Labor has referred to its former 20% test as a "bright line" test connoting its stringent application. 29 Fed. Reg. 22160 (April 23, 2004). Pennsylvania employees are entitled to the superior protection afforded to them under the exemption set forth in the Pennsylvania Law when those exemptions are more stringent than those afforded under the FLSA. *Friedrich v. U.S. Computer Services, Inc.*, 833 F.Supp. 470 (E.D. Pa. 1993).

Second, the statute of limitations under the FLSA is two years or three years only if the employee can show that his employer's violations were "willful". *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988); *see also* 29 U.S. C. § 255. Whereas the PMWA contains no statute of limitations, Courts have applied a three year statue of limitations. *Caucci v. Prison Health Services, Inc.*, 153 F.Supp.2d 605 (E.D. Pa. 2001); *Friedrich*, 833 F.Supp. at 477. If the three year statute of limitations is found to be inapplicable, Pennsylvania's statue of limitation for actions without a specifically stated statute of limitations is six years, 43 Pa. C.S. § 5527(b). This means that under the FLSA, employees are generally restricted to two years of back wages, whereas under the Pennsylvania law employees are entitled to at least three years of back wages, and perhaps six years.

Most importantly, in a class action filed pursuant to Pa. R.C.P. No. 1701, the filing of the original lawsuit tolls the statue of limitations for all members of the class. Pa. R.C.P. No. 1701, explanatory note-1977, *citing Bell v Beneficial Consumer Discount Co.*, 348 A.2d 734 (Pa. 1975), but in § 216(b) actions, the statute of limitations is only tolled for each individual employee when that employee actually "opts-in" to the action. 29 U.S.C. § 256. Baum was filed on March 27, 2007. As of the filing of this Brief, there has been no opportunity for other potential class members to have opted in to this action, so the difference between the two statutes of limitations has been further emphasized by the additional time period consumed thus far in this litigation. At this time, pursuant to the FLSA, an employee who "opted-in" would have no claim to any unpaid wages prior to April of 2005, whereas should this lawsuit proceed, "opt out" employees having claims back to March 27, 2004, would have their claims protected.

Third, the method of calculation of overtime wages can differ between the PMWA and the FLSA in that salaried employees working a variable work week under the FLSA are only entitled to half time, as it is presumed that they have already recovered straight time wages for all hours worked. *Rau v. Darling Drug Stores*, 388 F.Supp. 877 (W.D. Pa. 1975). Provisions of the PMWA permitting half time calculation affect only employees paid on day or job rates so instead of receiving as damages an amount one half of the regular rate of pay calculated by dividing the hours actually worked into the fixed salary commissions for a variable work week, employees may be awarded damages in an amount at one and one half times the regular rate of pay for each hour worked over forty in a work week, calculated by dividing forty into their salary and commissions. 34 Pa. Code § 231.43(b), *Friedrich*, 833 F.Supp. at 474. In actual calculation, the damages calculated in this manner are more than three times those that would be calculated under the FLSA.

Finally, class actions filed in State Court under Pa. R.C.P. No. 1701 are filed as "opt-out" actions, where a member of the class is a member of the class unless he/she takes affirmative action to "opt-out" of the class. Collective actions filed under the FLSA are filed under 29 U.S.C. § 216(b), where a person is not a member of the class until he/she takes the affirmative act of filing a document expressing his/her interest in filing a claim. The impact of these provisions is demonstrated above.

It is clear that the PMWA has provisions superior to those of the FLSA in benefiting employees in Pennsylvania. These provisions are consistent with the intent of "savings clause" of the FLSA and within the intent of Congress that States have the power to provide superior protection to their citizens.

AstraZeneca's Motion for Summary Judgment asking that the Court dismiss Baum's class action and class certification claims as preempted by the FLSA, must be denied.

## CONCLUSION

For the reasons stated herein, Plaintiff respectfully submits that AstraZeneca's Motion for Summary Judgment as to Plaintiff's individual state wage law claims must be denied in its entirety.

**SPECTER SPECTER EVANS**
**& MANOGUE, P.C.**

By: s/Joseph N. Kravec, Jr.
       Joseph N. Kravec, Jr.

The 26th Floor Koppers Building
Pittsburgh, PA 15219
Telephone: (412) 642-2300
Facsimile: (412) 642-2309

John R. Linkosky, Esquire
Pa. I.D. No. 66011
JOHN LINKOSKY & ASSOC.
715 Washington Avenue
Carnegie, PA 15106
Telephone: (412) 278-1280
Facsimile: (412) 278-1282

Joseph E. Fieschko, Jr., Esquire
FIESCHKO AND ASSOCIATES, INC.
2230 Koppers Building
Pittsburgh, PA 15219
Telephone: (412) 281-2204

*Counsel for Plaintiff, Kristin Baum*

## CERTIFICATE OF SERVICE

The undersigned, Joseph N. Kravec, Jr., Esquire, hereby certifies that he served a true and correct copy of the **PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** on counsel for Defendant by Electronic Mail this 9th day of May, 2008 as follows:

James S. Urban, Esquire
JONES DAY
500 Grant Street, 31st Floor
Pittsburgh, PA 15219

Matthew W. Lampe, Esquire
JONES DAY
325 John H. McConnell Boulevard, Suite 600
Columbus, OH 43215

Harry I. Johnson, III, Esquire
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071-2300

Theresia M. Moser, Esquire
JONES DAY
1429 Peachtree Street, N.E., Suite 800
Atlanta, GA 30309-3053

s/Joseph N. Kravec, Jr.
Joseph N. Kravec, Jr., Esquire