IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KRISTIN BAUM, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ASTRAZENECA LP,<br><br>Defendant. | Civil Action No. 3:07-cv-00090-KRG<br><br>Judge: Kim R. Gibson |

## REPLY TO PLAINTIFF'S BRIEF IN RESPONSE TO ASTRAZENECA'S MOTION FOR SUMMARY JUDGMENT

In her Brief in Response to Defendant's Motion for Summary Judgment ("Baum's Brief"), Plaintiff Kristin Baum ("Baum") identifies no disputed material facts that would prevent summary adjudication in favor of AstraZeneca LP ("AstraZeneca"). For instance, in response to AstraZeneca's showing that she was an exempt outside salesperson, Baum does not dispute that that (i) her job was to persuade physicians to write AstraZeneca prescriptions for approved uses; (ii) she spent the overwhelming majority of her time in the field, outside the presence of a supervisor, making calls on physicians for this purpose, and (iii) she concluded her calls by asking for and obtaining commitments from physicians to write prescriptions for AstraZeneca products. *See Baum's Response to Defendant's Concise Statement of Undisputed Material Facts (Baum's SUF Response") at* ¶¶ *37-39.* As the Company demonstrated in its Opening Brief, these facts alone are sufficient to warrant the dismissal of Baum's case – the result in every case to have considered the question. See Menes v. Roche Labs., Inc., No. 2:07-cv-01444-ER-FFMx, 2008 U.S. Dist. LEXIS 4230 (C.D. Cal. Jan. 7, 2008) (appeal pending); Barnick v. Wyeth, 522 F. Supp. 2d 1257 (C.D. Cal. 2007) (appeal pending); D'Este v. Bayer Corp., No. CV 07-3206-JFW

(PLAx), 2007 U.S. Dist. LEXIS 87229 (C.D. Cal. Oct. 9, 2007) (appeal pending). Also, Baum failed to show that prescriptions are not orders and, in fact, the Pennsylvania legislature conclusively has designated them so, which is an independent reason for holding that Baum met the outside sales exemption. See 63 P.S. § 390-2; 35 P.S. § 780-102.

Similarly, Baum identifies no disputed material fact that would prevent summary adjudication in favor of AstraZeneca on its alternative argument that Baum was an exempt administrative employee. Indeed, the essence of Baum's position in this case is that she represented AstraZeneca in promoting the sale of its products *(Baum's SUF Response at ¶¶ 16, 18, 20, 26, 32-36, 41, 48, 51-52, 60-64)* – which is a quintessential exempt administrative function. Further, Baum's own testimony and writings illustrate the numerous ways in which she exercised discretion and independent judgment, notwithstanding her attempts to minimize her constant choices and decisionmaking. Further, Baum makes no attempt to distinguish (and does not even mention) the decision in Cote v. Burroughs Wellcome Co., 558 F.Supp. 883 (E.D. Pa. 1982), in which the court found a pharmaceutical sales representative to be administratively exempt.

Finally, Baum barely addresses – and has no cogent response to – AstraZeneca's second alternative argument, which is that the doctrine of obstacle conflict preemption bars Baum's claims. Instead, her straw-man response focuses on express and field preemption, issues that AstraZeneca never even raised. In short, with the *material* facts undisputed, the Court should enter summary judgment for AstraZeneca and dismiss Baum's claims with prejudice.

## ARGUMENT

### I. Baum Has Failed To Identify Any Genuine Issue Of Material Fact

Federal Rule of Civil Procedure 56(e) requires a party opposing summary judgment to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

More specifically, Local Rule 56.1.C.1.(b) required Baum to set forth the basis for the denial of any fact asserted by AstraZeneca in its Concise Statement of Material Facts with appropriate reference to the record. Baum also was required to "set forth in *separately numbered paragraphs* any other material facts that are allegedly at issue, and/or that Baum asserts are necessary for the court to determine the motion for summary judgment." Local Rule 56.1.C.1.(c).

Here, Baum addressed only AstraZeneca's material facts and did not submit separately numbered paragraphs containing other material facts to which AstraZeneca would be obligated to respond pursuant to Local Rule 56.1.D. In responding to AstraZeneca's material facts, Baum concedes that 31 of the 69 are "not disputed." Further, for the majority of the facts that she disingenuously labels "disputed," there is no actual fact dispute because said facts are based on Baum's own testimony or writings; Baum only disputes the legal significance of the facts and/or attempts to put her own spin on her testimony. *See Baum's SUF Response at ¶¶ 2, 11, 16, 19-20, 23, 24, 47-52, 56 (asserting legal argument that she did not "sell" AstraZeneca products to anyone); ¶41, 44, 65-66 (arguing that her presentations were "scripted," but not denying the material facts asserted); ¶10 (arguing that training on "detailing" her AstraZeneca products was not sales training, but conceding that training occurred); ¶42 (arguing that a CVA was only two to three pages long, but not denying that she decided which sections of a CVA to discuss).*

Finally, as to the other material facts that Baum claims are disputed, she simply misrepresents the record evidence. Specifically:

- ¶26, 53-54: Baum admitted at her deposition that she wrote the quoted text concerning her activities on pages AZB C0000592-594 with the help of her manager *(Baum Ex. 6 (Baum Dep., 182:16-184:7)*, and admitted that her communications to her managers, such as this document that was emailed to her manager, were generally accurate *(id. at 95:18-23)*. Further, she provides no evidence whatsoever to support her assertion that this is a "generic" document or that she never worked in Maryland.

Indeed, she admitted that part of one of her territories was in Maryland. *Id. at 98:17-23; see also 98:24-99:24.*

- ¶29: Baum testified that access meals, one method she used to persuade physicians about AstraZeneca products, "could go anywhere from two hours to four hours" and that they happened on a daily or twice-a-week basis, depending on the type of meal. *Id. at 169:11-17; 170:9-171:12.*

- ¶30: Baum testified that her calls with physicians could last 45 minutes or longer. *Id. at 209:17-210:12.*

- ¶32-36: Baum contends that AstraZeneca (not her) drafted the business plan for her cylinder, but the business plan to which she refers is not the document that AstraZeneca submitted in record evidence or relied upon in paragraphs 32-36. Rather, AstraZeneca submitted and relied upon Baum's PSS performance plan, which Baum admitted that she wrote with the help of her manager and the contents of which Baum agreed with. *AstraZeneca Ex. 7; Baum Ex. 6 (Baum Dep. at 111:8-12, 112:8-18, 131:19-132:4).*

- ¶40: Baum admitted that she was expected by AstraZeneca to "[p]rovide value on every call and ask for a commitment." *Baum Ex. 6 (Baum Dep. at 140:8-12).*

- ¶45: Baum speciously contends that her daily activities were closely tracked, ridiculously speculating that because she turned in her cellular telephone bills, "they know what tower you are using. Where signals are coming from…." She admitted that she has no evidence that such monitoring ever took place, and she conceded that her manager was not present with her daily, nor did her manager ever show up unannounced. *Id. at 243:21-244:17.*

In attempting to satisfy her burden, Baum must "present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue" for trial. Sampath v. Concurrent Technologies Corp., No. 3:03-CV-264, 2008 WL 868215, *28 (W.D. Pa. March 31, 2008) (Gibson, J.) (quoting McCabe v. Ernst & Young, LLP, 494 F.3d 418, 436-37 (3d Cir. 2006). She has failed to do so. When "there are no disputed material facts that need to be resolved by a finder of fact," the court may apply the law to the undisputed facts and, when appropriate, enter summary judgment for the moving party. Combs v. Homer Center School Dist., 468 F.Supp.2d 738 (W.D. Pa. 2006). Here, there are no disputed material facts, the controlling law favors AstraZeneca, and entry of summary judgment for AstraZeneca is appropriate.

## II. Baum Was Exempt Under Pennsylvania's Outside Salesperson Exemption.

In its Opening Brief, AstraZeneca demonstrated (at 8-16) that Baum's claims fail because the Company's classification of her as exempt satisfied all elements of Pennsylvania's outside salesperson exemption. To the extent that Baum tries to create jury questions about these elements, she fails as a matter of law.

### A. Baum Made Sales

Initially, Baum attempts to create a jury issue as to whether her duties involved making sales for purposes of Pennsylvania's outside salesperson exemption. Here, Baum falls short on several grounds.

First, Baum concedes facts that demonstrate – as a matter of law – that her duties qualified as "sales." Specifically, Baum admitted that her functions included helping persuade physicians to write prescriptions and that she concluded her in-person physician calls by asking doctors to commit to prescribe AstraZeneca products. *Defendant's Concise Statement of Undisputed Material Facts, paras. 37-39; Baum's Response to Statement of Materials Facts, admitting paras. 37-39*. As AstraZeneca showed in its opening papers (Opening Brief at 10-12), such efforts constitute "sales" for purposes of the outside salesperson exemption. See, e.g., D'Este, 2007 U.S. Dist. LEXIS 87229 at *14 (holding that plaintiff was an exempt outside sales person, noting that "doctors are the 'customers' of [a pharmaceutical company] and [a pharmaceutical sales representative's] job was to 'close' the doctors in her territory by getting them to 'commit' to writing more prescriptions"); Barnick, 522 F. Supp. 2d at 1264 (similar result, noting that "[b]ecause physicians determine whether or not a patient will buy a prescription product, it is they who are appropriately the target for sales efforts"); see also Menes, 2008 U.S. Dist. Lexis 87229 at *13; Medtronic, Inc. v. Benda, 689 F. 2d 645, 648 (7th

Cir. 1987); Medtronic, Inc. v. Gibbons, 527 F. Supp. 1085, 1094 (D. Minn. 1981), aff'd, 684 F.2d 565 (8th Cir. 1982).

Second, Baum misses the mark with her assertion (Opposition at 6) that she did not "sell" because she did not "physically take orders or directly sell drugs to any individual person who eventually takes or purchases AstraZeneca's drugs." Essentially, Baum argues that an activity constitutes "sales" only if it embodies a transactional-type model in which a party is handed consideration in exchange for property. But Baum does not – and, indeed, cannot – establish that this is the only type of sale. See, e.g., Webster's 3rd New World Int'l Dictionary, unabridged edition, G & C Merriam & Co. (1981) (defining the term "sell" as including the concept of "influence[ing] or induc[ing] to make a purchase"); accord Dunlop v. Ashy, 555 F.2d 1228, 1234 (5th Cir. 1977) (noting that while wage statutes are to be liberally construed, they "must be applied with reason and in a common sense fashion"); McComb v. Hunt Foods, Inc., 167 F.2d 905, 906 (9th Cir. 1948) (agreeing, in applying FLSA exemptions, that "no formalistic characterizations should be permitted in dealing with any of these clauses since the plain intention of the statute should be carried out"); Platek v. Duquesne Club, 961 F.Supp. 831, 833 (W.D. Pa. 1994) (in interpreting FLSA, "the Court should avoid an interpretation that leads to an absurd result"); U.S. v. Gaither, 533 F.Supp.2d 540, 543-44 (W.D. Pa. 2008) ("courts must 'give the words of a statute their ordinary, contemporary, common meaning absent an indication Congress intended them to bear some different import.'") (Gibson, J., quoting Williams v. Taylor, 529 U.S. 420, 431 (2000)). To the contrary, and as noted, every court to have considered the question has rejected attempts such as Baum's to parse the term "sales" so as to exclude pharmaceutical sellers from exempt status. See, e.g., Menes, 2008 U.S. Dist. Lexis 87229 at *13; D'Este, 2007 U.S. Dist. LEXIS 87229 at *14; Barnick, 522 F. Supp. 2d 1264. Baum, herself, described her job as a sales position. *AstraZeneca Exs. 4-5 (Baum resumes).*

Furthermore, Wirtz v. Keystone Reader Serv., Inc., 418 F.2d 249, 260 (5th Cir. 1969), the only case that Baum cites in this section of her Opposition (at 6-7), is inapposite and does not support Baum's position. That case involved "student salesmen," boys as young as 13 who were employed to make "the first contact [with potential customers] on a house-to-house canvass." Id. at 251. Critically, these individuals were not exempt outside salespersons because they "were engaged in promotional activities incidental to sales made by . . . student managers." Id. at 260 (emphasis added). In other words, student salesmen were "engaged only in obtaining a list of persons who seem receptive to the idea of purchasing magazine subscriptions." Id. at 260. These lists were then forwarded to student managers – true salespeople who not only made the actual sale but detailed to the customer "terms different from those represented by the 'student salesman.'" Id. at 253. Here, by contrast, Pharmaceutical Sales Specialists such as Baum do not support sales made by other AstraZeneca employees. After Baum interacted with a doctor, no further AstraZeneca employee (or anyone else) contacted the doctor or his or her patient to "close" the sale, and Baum thus was the last person to engage in sales activity before the doctor wrote a prescription.

Third, Baum's attempts (Opposition at 8-11) to distinguish D'Este, Barnick, and Menes fall flat. For instance, Baum notes (id. at 9) that these cases were decided under California law, and that Pennsylvania's outside salesperson exemption (unlike California's) "requires that [sales] activity compiles more than 80% of the time worked by the employee." But the issue before this Court is what sorts of activities constitute "sales," and Baum does not – and cannot – contend that Pennsylvania and California define that term differently. Nor does she contest that she herself spent substantially more than 80% of her time in the field, calling on physicians. (Opening Brief at 15-16.) Baum admits that she spent "ninety percent or more of her time

making calls in the field." *Baum's SUF Response at* ¶56. In short, any differences between California and Pennsylvania law are irrelevant as to the matters presently under consideration.

Similarly, there is no merit to Baum's contention (Opposition at 8-9) that D'Este, Barnick, and Menes failed to consider the plaintiffs' "actual job duties and actions."[1] Again, these cases each considered the issue of whether the plaintiff's job duties constituted "sales" for purposes of the outside salesperson exemption. See D'Este, 2007 U.S. Dist. LEXIS 87229 at *14 (court "review[ed] the nature of the transaction at issue," determining that "doctors are the 'customers' ... and the [pharmaceutical sales representative's] job was to 'close' the doctors ... by getting them to 'commit' to write more prescriptions"; Barnick, 522 F. Supp. 2d at 1262 (court found the plaintiff "engaged in activities directed toward the consummation of his own sales, at least to the extent of obtaining a commitment to buy from the person to whom he is selling" by visiting physicians and gaining the commitment to write prescriptions); see also Menes, 2008 U.S. Dist. Lexis 87229 at *13. The courts looked to indicia of outside sales positions – e.g., sales training, lack of direct supervision, compensation based upon sales –as an aid in analyzing the plaintiff's duties.

Finally, Baum's attempts (Opposition at 10-11) to factually distinguish D'Este, Barnick, and Menes fail. Like the plaintiffs in those cases, Baum spent the vast majority of her time making calls on physicians to influence them to write more prescriptions of AstraZeneca products for approved uses. *Baum Ex. 6 (Baum Tr.), 43:8-18; 212:16-213:3; 252:3-5.* Like those plaintiffs, she closed her calls by seeking commitments. *Id.* Like those plaintiffs, she spent the vast majority of her time alone, outside of the presence of any supervisors. *Id. at 242:21-25; 244:10-13; 244:22-245:1; 252:6-10.* Further, as Baum concedes in her Opposition,

---

[1] Indeed, Baum's concession that, "in analyzing the primary duty of an employee claimed to be exempt, a court must focus on the day to day activities of the employee" (Baum Brief at 10) (citations omitted), wholly undermines any claim that common issues would predominate this matter or that the case may proceed as a class action.

she received both initial sales training and training "heavily concentrated in product knowledge." (Opposition at 10-11; *Baum Ex. 6 (Baum Tr.), 76:5-78:11*). Likewise, she concedes (*Baum's SUF Response at ¶ 50*) that her compensation was based, in part, on hitting sales targets and increasing market share or total prescriptions and/or new prescriptions within her assigned geography. See Nielsen v. Devry, Inc., 302 F.Supp. 2d 747, 757-78 (W.D. Mich. 2003) (noting that such incentive compensation arrangements, even though they "differ from classic commissions," reflect an employee's "ability to accomplish ... the closing of the 'sale'"). In short, like the plaintiffs in D'Este, Barnick, and Menes, Baum was properly classified as an exempt outside sales person.

### B. Baum's Job Was Obtaining Orders

While the fact that Baum made sales is sufficient to establish her eligibility of the outside salesperson exemption, AstraZeneca also showed in its Opening Brief (at 14) that Baum qualified for the exemption because she was engaged in "[o]btaining orders." 34 Pa. Code § 231.85(2). Baum identifies (Opposition at 7-8) nothing that would preclude summary judgment on this additional ground.

Baum first cites (Opposition at 8) to a code provision that defines the terms "dispense" and "dispensing," arguing that a prescription is not an order, but merely "an instruction to the pharmacist to 'dispense' the drug mentioned." However, the plain language of two Pennsylvania statutes expressly characterizes a prescription as an "order." See 63 P.S. § 390-2 ("prescription" is "written or oral order issued by a duly licensed medical practitioner"); 35 P.S. § 780-102 ("prescription" is "an order ... for medication ... dispensed to or for an ultimate user"). Baum points this Court to no authority suggesting that the Pennsylvania legislature did not mean what it said with this language. See Conn. Mut. Life Ins. Co. v. Wyman, 718 F.2d 63, 65 (3rd Cir. 1983) ("[W]e conclude that the clear and explicit language of the statute must control unless

Pennsylvania courts have indicated otherwise."). "Order" means "order," and Baum offers no reason to look for an alternate meaning to this clear term. See Zimmer v. O'Bannon, 497 Pa. 551, 556 (Pa. 1982) ("[W]here the words of the statute are clear and free from all ambiguity, the letter of it will not be disregarded under the pretext of pursuing spirit. . . .").

Baum also mistakenly contends (Opposition at 8) that she did not "obtain" orders due to the fact that she was "never . . . in contact with the actual purchaser of an AstraZeneca drug." In other words, her sales efforts were directed to physicians (who write prescriptions), rather than patients (who take prescriptions to pharmacies) or pharmacists (who fill them). But, as the Barnick court noted, the fact that physicians are not the so-called "ultimate purchasers of [AstraZeneca's] products . . . is clearly a distinction without a difference." 522 F. Supp. 2d at 1264. Doctors "control the product's ultimate purchase" because "physicians determine whether or not a patient will buy a prescription product." Id. As such, the true "buyer" in this context is "the doctor who has the capacity to *place an order*' for [the pharmaceutical manufacturer's] product by writing a prescription for a patient." D'Este, 2007 U.S. Dist. LEXIS 87229 at *14 (emphasis supplied). That those orders are later filled by a pharmacist is simply irrelevant to the question of Baum's exempt status. See C.F.R. § 541.504(c)(1) (2004) (salesperson who visits retailer "for the purpose of obtaining orders" is "performing sales work regardless of the fact that the order is filled by" someone else); Gregory v. First Title of Am., Inc., 2008 WL 150487 at *1-*2 (M.D. Fla. Jan. 14, 2008) (employee of a company that closed real estate and issued title insurance was exempt outside salesperson where her duties involved generating "orders" for title insurance that were filled by other employees). To the contrary, accepting Baum's position that she did not obtain orders "would produce the absurd conclusion that [a pharmaceutical manufacturer] does not engage in any sales activity regarding its prescription products merely

because its efforts are rationally aimed at those determining the product's purchase rather than the directed buyers of the product." Barnick, 522 F. Supp. 2d at 1264.

Finally, Baum mischaracterizes (Opposition at 8) the testimony of AstraZeneca's corporate designee, Cynthia Atha, claiming that she "acknowledged that Plaintiff did not 'obtain orders' from prescribers." Baum wholly ignores the fact that Atha testified that Pharmaceutical Sales Specialists "generate[] the order from the physician which is the prescription." *Baum Ex. 2 (Atha Dep.), 34:16-18; see also Atha Dep. at 21:14-21 (PSSs ask for prescriptions, which are a physician's way of placing an order).* Atha's testimony clearly supports the position that Baum obtained orders and, as such, that she was an exempt outside salesperson.

### III. The Administrative Exemption Also Precludes Baum's Claims

AstraZeneca also demonstrated (Opening Brief at 16-21), assuming *arguendo* that Baum was correct in her legal contention that she did not engage in "sales" for purposes of Pennsylvania's outside salesperson exemption, that Baum was an exempt administrative employee. Baum fails with her various attempts to create triable issues on this score.

First, Baum does not even attempt to distinguish (nor could she) Cote v. Burroughs Wellcome Co., 558 F.Supp. 883 (E.D. Pa. 1982), the Pennsylvania federal district court decision finding that pharmaceutical sales representatives were exempt administrative employees. The Cote court rejected arguments (which are asserted by Baum here) that pharmaceutical sales representatives do nothing more than exercise "skill in applying techniques, procedures, or specific standards," and make "decisions relating to matters of little consequence." Cote, 558 F. Supp at 886. Baum's own testimony demonstrates that she exercised significant discretion and judgment going beyond that upon which the Cote court seized: Baum added and deleted doctors from her call list *(Baum Ex. 6 (Baum Dep.) at 187:12-190:25)*, probed physicians to identify their interests and needs *(id. 223:14-21)*, never repeated the same message *(id. at 249:14-17)*,

decided whether and to what degree to use a visual aid during discussions with a doctor *(id. at 206:20-207:2)*, analyzed sales data related to her territory *(id. at 61:1-63:10)*, decided which doctors to visit on any given day *(id. at 203:18-204:3)*, and had discretion to decide how much time to spend with any given doctor. *Id. at 204:4-17.*

Second, there is absolutely no merit to Baum's contention (Baum Br. at 16) that, by advocating application of the outside salesperson exemption, AstraZeneca is somehow estopped from asserting an administrative exemption defense. This defense constitutes an alternative argument, which responds to Baum's own *post hoc* assertion that her former job duties involved marketing and promotion work rather than sales. (See, e.g., Baum Brief at p. 17 (Baum's contention that she "promot[ed] AstraZeneca's drugs to prescribers").) A defendant is permitted to advance alternative theories and defenses, "regardless of consistency." Fed.R.Civ.P. 8(d)(3).

Third, Baum identifies (Baum Br. at 14-16) no jury issues as to whether her primary duty related to AstraZeneca's management policies or general operations. As AstraZeneca pointed out in its Opening Brief (at 17-18), activities such as representing the company and promoting sales – the very duties that Baum claims to have performed – are classic examples of work related to management policies or general operations. See, e.g., 29 C.F.R. § 205(c)(5) (2004) (stating that "promotion men" are the quintessential type of employee who perform work directly related to management policies or general business operations).

Baum also contends (Baum Br. at 15) that "AstraZeneca has presented no evidence that its business operations are significantly affected by the work of [Pharmaceutical Sales Specialists]." But the record is replete with evidence that Pharmaceutical Sales Specialists, such as Baum, are the Company's only sales persons and are critical to driving the Company's sales. *Baum Ex. 2 (Atha Dep. at 27:20-28:8) (testifying that physician commitments obtained by Baum and other Pharmaceutical Sales Specialists are what drive AstraZeneca sales; Baum Ex. 1*

*(Ventura Dep) at 444-445 ("[T]he commitment by the physician is the first step in the selling process.") see also AstraZeneca Exs. 4-5 (Baum's own resumes, touting her own impact on market share).*

Further, Baum turns the applicable legal test on its head with her apparent contention (Baum Br. at 15) that she did not perform work related to management policies or business operations because she was not involved in "research, development, and manufacturing of pharmaceutical products." As noted, the administrative exemption applies to "white-collar employees engaged in 'servicing' a business." 29 C.F.R. § 205(b). In other words, it encompasses Baum and other employees who perform work – like marketing and promoting sales – that is "ancillary to an employer's principal production activity." Renfro v. Indiana Mich. Power Co., 370 F.3d 512, 517 (6th Cir. 2004) (internal citations omitted). As a general matter, such employees are to be <u>distinguished</u> from so-called "production" employees, whose work "is to generate (i.e. 'produce') the very product or service that the employer's business offers to the public." Id. at 518 (internal citations omitted). In short, the fact that Baum was not involved in research, developing, or manufacturing pharmaceuticals lends support to – and in no way undermines – a finding that she fell within the administrative exemption.

Likewise, Baum misses the mark with her contentions (Baum Br. at 15) that she was a "low level" employee who only carried out AstraZeneca's marketing scheme. "Employees whose work is 'directly related' to management policies or to general business operations include those [whose] work affects policy or whose responsibility it is to execute or carry it out." 29 C.F.R. § 541.205(c) (2004). Furthermore, the fact that an employer has a number of employees in a position does not affect exempt administrative status:

> It should be noted in this connection that an employer's volume of activities may make it necessary to employ a number of employees in some of these categories. The fact that there are a number of other employees of the same employer carrying out assignments of

the same relative importance or performing identical work does not affect the determination of whether they meet this test so long as the work of each such employee is of substantial importance to the management or operation of the business.

29 C.F.R. § 205(c)(6) (2004).

Fourth, Baum does not create a jury question with her bald contention (Baum Br. at 17) that she "exercised no discretion and independent judgment when it came to her job promoting AstraZeneca's drugs to prescribers." Indeed, Baum's claim defies common sense, as she was unsupervised in the field for weeks at a time, and her duties in this highly regulated, complex environment involved developing relationships and regularly carrying on conversations with medical care professionals about approved uses of AstraZeneca products — covering specialized areas of knowledge like physiology, disease states, drug efficacy, and drug indications — and lasting up to two to four hours. *Tab 6 (Baum Dep. at 169:6-170:2; 171:2-5)*.

Simply put, Baum here ignores her own testimony and writings that she created as a Pharmaceutical Sales Specialist. (Opening Brief at 19-21.) Such evidence demonstrates that Baum exercised discretion and judgment in various ways. For instance, contrary to her contention that she recited a script in robotic fashion, Baum probed physicians to identify their interests and needs *(Baum Ex. 6 (Baum Tr.) 223:14-21)*, and she never repeated the same message *(id. at 249:14-17)*. She decided whether or not to use a visual aid during discussions with a doctor *(id. at 206:20-207:2)*, and, if so, what pages to use *(Id. at 217:19-21)*. Baum analyzed data provided to her by AstraZeneca to identify territory and market trends. *(Id. at 61:1-63:10)*. She had discretion to plan her workday, admitting that she and her cylinder mates themselves decided which doctors to visit on any given day *(id. at 203:18-204:3)*, and she had discretion to decide how much time to spend with any given doctor *(id. at 204:4-17)*. Further, Baum testified that she could change her STP list (e.g., list of doctors within her territory to call on) every four months, and she and her cylinder would modify the STP list, including adding and

deleting doctors from the list and adjusting the frequency of visits per doctor. *Id. at 187:12-190:25*. This was confirmed by AstraZeneca's corporate designee, who testified that PSSs "get a suggested list. They have the ability to take that list and alter it to make additions and deletions of customers on that list based on their knowledge of the respective territories that they cover." *Baum Ex. 2 (Atha Tr.) at 117:2-5*.

At best, Baum notes (Baum Br. at 18-19) that – like any employee – she was subject to certain work rules (e.g., she was expected to check her e-mail) and that AstraZeneca provided her with certain materials to assist her in performing her job. But, as the foregoing demonstrates, none of this changes the fact that Baum's duties "<u>included</u> work requiring the exercise of discretion and independent judgment." 34 Pa. Code § 231.83(5) (emphasis added); <u>see also</u> Renfro, 370 F.3d at 519; <u>Hogan v. Allstate Ins. Co.</u>, 361 F.3d 621, 627 (11th Cir. 2004). In sum, then, if Baum did not meet the requirements of Pennsylvania's outside salesperson exemption, she plainly meets all requirements of the Commonwealth's administrative exemption, and AstraZeneca is entitled to summary judgment for this additional reason.

## IV. Baum's Claims Are Preempted in all Events

AstraZeneca lastly demonstrated (Opening Brief at 21-25) that the doctrine of obstacle conflict preemption bars Baum's claims, since the absence of an opt-in requirement in Pennsylvania wage statutes blocks the accomplishment and execution of the Congressional objectives behind Section 216(b). <u>See</u> 29 U.S.C. § 216(b). Again, Baum has no cogent response to this alternative argument.

Initially, Baum suggests (Baum Br. at 20) that "an individual claim, brought only under Pennsylvania law to collect unpaid overtime," is not preempted by Section 216(b). At best, her argument attacks a straw man. This is a putative class case, and Baum has separately filed a motion for class action certification. Thus, the question before this Court is whether this

representative action poses an obstacle to Congressional purposes. The answer to that question is yes, and this Court should leave for another day the separate issue of whether obstacle preemption would apply to a single-plaintiff overtime action.

Baum goes on to wholly sidestep the issue of whether her putative representative action would block the accomplishment of Section 216(b)'s objectives. She never addresses the fact that Section 216(b) "limit[s] private FLSA claims to those affirmatively asserted be affected employees in their own right" and that it "frees employers of the burden of representative actions." Ellis v. Edward D. Jones & Co., 527 F. Supp.2d 439, 451 (W.D. Pa. 2007) (internal citations omitted). This can only be seen as a concession that her claims, in fact, are preempted because they impermissibly interfere.

Instead, Baum inaccurately contends (Baum Br. at 21) that the Third Circuit's decision in C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co., 386 F.3d 263, 268 (3d Cir. 2004), indicates that a presumption exists against the application of obstacle conflict preemption. The Third Circuit made no such statement in that case, and, in fact, it easily found (with little analysis) that the doctrine barred the tort claims at issue in that case. Id. at 270.

Baum then argues, at length (Baum Br. at 22-25), that Pennsylvania law is more favorable to her in terms of its limits on the amount of non-exempt work that exempt employees may perform, its statute of limitations, its tolling provisions, its method of overtime calculation, and, ironically, that it permits opt-out class actions. Whatever the merits of this position, it is again is a red herring. As AstraZeneca demonstrated (Opening Br. at 24-25), the FLSA's savings clause is limited: it permits states to establish a higher minimum wage or shorter workweek than that mandated by Congress. None of the differences that Baum notes fall within the ambit of the FLSA's savings clause – to the contrary, the fact that Pennsylvania law permits representative actions is the very reason that obstacle preemption applies in this case. As such,

Baum has identified nothing to change the fact that obstacle preemption mandates the dismissal – with prejudice – of her class action complaint.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in AstraZeneca's moving papers, this Court should grant AstraZeneca's Motion, and it should dismiss Baum's Complaint in its entirety with prejudice.

Dated: May 23, 2008                          Respectfully submitted,


                                             s/ James S. Urban
                                             James S. Urban
                                             jsurban@jonesday.com
                                             Pa. Bar No. 82019
                                             JONES DAY
                                             500 Grant Street, Suite 3100
                                             Pittsburgh, PA 15219-2502
                                             Telephone: (412) 391-3939
                                             Facsimile: (412) 394-7959

                                             Matthew W. Lampe (admitted *pro hac vice*)
                                             mwlampe@jonesday.com
                                             JONES DAY
                                             222 East 41st Street
                                             New York, New York 10017-6702
                                             Telephone: (212) 326-3939
                                             Facsimile: (212) 755-7306
                                             *Not Admitted In New York*

                                             Harry I. Johnson, III. (admitted *pro hac vice*)
                                             harryjohnson@jonesday.com
                                             JONES DAY 555
                                             South Flower Street, 50th Floor
                                             Los Angeles, CA 90071-2300
                                             Telephone: (213) 489-3939
                                             Facsimile: (213) 243-2539

                                             Theresia M. Mosier (admitted *pro hac vice*)
                                             tmoser@jonesday.com
                                             JONES DAY
                                             1429 Peachtree Street, N.E., Suite 800
                                             Atlanta, GA 30309-3053
                                             Telephone: (404) 521-3939
                                             Facsimile: (404) 581-8330

                                             Counsel for Defendant AstraZeneca LP